**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

**CRYSTAL F.,**

      **Plaintiff,**

**vs.**                                 **CIVIL ACTION NO. 2:23-CV-00612**

**MARTIN J. O'MALLEY,
COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

**PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's applications for Disability Insurance Benefits (DIB) under Title II and for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. By Order entered September 15, 2023 (ECF No. 3), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the Plaintiff's Memorandum of her Motion for Judgement on the Pleadings and the Defendant's Brief in Support of Defendant's Decision. (ECF Nos. 7, 8)

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **DENY** Plaintiff's request for remand (ECF No. 7), **GRANT** Defendant's request to affirm the decision of the Commissioner

1

(ECF No. 8); **AFFIRM** the final decision of the Commissioner; and **DISMISS** this action from the docket of the Court for the reasons stated *infra*.

## Procedural History

The Plaintiff protectively filed her applications for DIB and SSI on July 30, 2020 alleging her disability began April 6, 2020 due to arthrofibrosis in right knee. (Tr. at 31, 404) Her claims were initially denied on July 14, 2021 (Tr. at 31, 132-144, 145-158) and again upon reconsideration on January 20, 2022 (Tr. at 31, 198-202, 203-205). Thereafter, the Plaintiff filed a written request for hearing on February 4, 2022 (Tr. at 208-209).

An administrative hearing was held on June 24, 2022, but continued to allow for a physical consultative examination (Tr. at 99); a supplemental hearing was subsequently held on January 31, 2023 before the Honorable Francine A. Serafin, Administrative Law Judge ("ALJ"). (Tr. at 102-131) On April 26, 2023, the ALJ entered an unfavorable decision. (Tr. at 28-54) On May 22, 2023, the Plaintiff sought review by the Appeals Council of the ALJ's decision. (Tr. at 342-343) The ALJ's decision became the final decision of the Commissioner on July 26, 2023 when the Appeals Council denied the Plaintiff's Request. (Tr. at 1-7)

On September 14, 2023, the Plaintiff brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (ECF No. 2) The Defendant, (hereinafter referred to as "the Commissioner") filed a Transcript of the Administrative Proceedings. (ECF No. 6) Subsequently, the Plaintiff filed her Memorandum of her Motion for Judgement on the Pleadings (ECF No. 7); in response, the Commissioner filed a Brief in Support of Defendant's Decision (ECF No. 8). Consequently, this matter is fully briefed and ready for resolution.

**Plaintiff's Background**

The Plaintiff was 26 years old as of the alleged onset/application filing date and considered a "younger person" throughout the underlying proceedings. See 20 C.F.R. §§ 404.1563(c), 416.963(c). (Tr. at 387) She obtained her GED in March 2013. (Tr. at 405) She has past relevant work as a management trainee, short order cook and hostess. (Tr. at 44)

**Standard**

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether the claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. §§ 404.1520(f), 416.920(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of

disability. <u>Hall v. Harris</u>, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, <u>McLain v. Schweiker</u>, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. <u>Id</u>. §§ 404.1520(g), 416.920(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. <u>McLamore v. Weinberger</u>, 538 F.2d 572, 574 (4th Cir. 1976).

## Summary of ALJ's Decision

In this particular case, the ALJ found the Plaintiff met the insured status requirements through December 31, 2023. (Tr. at 33, Finding No. 1) The ALJ then determined that the Plaintiff satisfied the first inquiry because she had not engaged in substantial gainful activity since the alleged onset date of April 6, 2020. (<u>Id</u>., Finding No. 2) Under the second inquiry, the ALJ found that the Plaintiff had the following severe impairment: osteoarthritis of the right knee with a history of multiple surgeries. (Tr. at 34, Finding No. 3) At the third inquiry, the ALJ concluded the Plaintiff's impairment did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 36, Finding No. 4)

The ALJ then found that the Plaintiff had the residual functional capacity ("RFC") to perform light work except she remains

> capable of standing and walking for four hours out of an eight-hour workday; sitting for six hours out of an eight-hour workday; occasionally climbing ramps and stairs; never climbing ladders, ropes and scaffolds; occasionally balance, stoop, kneel, crouch and crawl; and capable of tolerating occasional exposure to vibration, and

any workplace hazards such as moving machinery and unprotected heights.

(Tr. at 37, Finding No. 5)

At step four, the ALJ found the Plaintiff was unable to perform any past relevant work. (Tr. at 44, Finding No. 6) At the fifth step, the ALJ determined that in addition to the immateriality of the transferability of job skills, the Plaintiff's age, education, work experience, and RFC indicated that there are jobs that exist in significant numbers in the national economy that she can perform. (Tr. at 44, Finding Nos. 7-10) Finally, the ALJ determined the Plaintiff had not been under a disability from April 6, 2020. (Tr. at 45, Finding No. 11)

**Plaintiff's Challenges to the Commissioner's Decision**

First, the Plaintiff argues the ALJ's third step determination is not supported by substantial evidence: the medical evidence shows that the Plaintiff met Listing 1.17 requirements because despite having undergone right knee surgery, she still had severe pain, and she needed assistive devices to ambulate. (ECF No. 7 at 7-8) Additionally, the Plaintiff argues that the ALJ improperly evaluated her alleged symptomology pursuant to Social Security Ruling (SSR) 16-3p, by failing to address the supposed non-compliance with treatment and by failing to consider the extent to which she could perform daily activities. (Id. at 8-11) To correct all these errors, the Plaintiff asks the Court to remand this case. (Id. at 11)

In response, the Commissioner contends the ALJ properly determined the Plaintiff's severe impairment did not meet Listing requirements, particularly noting there was no documented medical need for an assistive device (ECF No. 8 at 9-12). Further, the Commissioner argues the ALJ also appropriately found the Plaintiff's subjective symptoms did not support her allegations of greater restrictions, and supported the ALJ's RFC assessment that she could still perform light

work with the support of the medical opinion evidence and other evidence of record, which included a fair assessment of the Plaintiff's testimony and statements regarding her daily activities (Id. at 12-19) In sum, the Commissioner argues the final decision finding the Plaintiff is not disabled is supported by substantial evidence. (Id. at 20)

**The Relevant Evidence of Record**[1]

The undersigned has considered all evidence of record, including the medical evidence, pertaining to the Plaintiff's arguments and discusses it below.

The Medical Evidence:

In April 2020, an x-ray on the Plaintiff's right knee found a loose body and a small to moderate suprapatellar joint effusion (Tr. at 494). Later that month, the Plaintiff had a right knee MRI that reflected a lateral patellar dislocation with osteochondral fracture, moderate sized lip hemarthrosis, various loose bodies, and increased tibial tubercle to trochlear groove distance indicating patellar maltracking (Tr. at 619-620).

Due to these knee issues, the Plaintiff had a medial quad tendon femoral ligament reconstruction and loose body removal performed on her right knee in May 2020 (Tr. at 601-602). In June 2020, she had some improvement but was having a difficult time with her therapy, and another procedure was recommended (Tr. at 584-585). Later that same month, a right knee arthroscopic synovectomy with culture, biopsies, and lateral release was performed (Tr. at 579-580). She underwent physical therapy and her right knee steadily improved, and by her four-week

---

[1] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings.

follow up she was off crutches and cane (Tr. at 569-571). In August 2020, she was "really improved with regards to range of motion" and "had no obvious instability episodes" (Tr. at 563). In November 2020, she was doing "very well" and "regained all of her motion and is doing most activities at this point" (Tr. at 644).

In January 2021, the Plaintiff complained of increasing pain in her right knee, but denied any instability (Tr. at 642-643). A February 2021 MRI showed postoperative changes but was otherwise unremarkable (Tr. at 650-651). An EMG was performed on her lower extremities in March 2021, which was normal (Tr. at 982). Following continued complaints of pain and lack of improvement with physical therapy, a right knee arthroscopy with chondroplasty of the medial patella facet was performed in March 2021 (Tr. at 638-639, 652). Following this procedure, the Plaintiff reported "doing very well" in April 2021 (Tr. at 679). She continued to undergo physical therapy, had intact strength, no crepitus on range of motion, and no severe effusion (Id.).

In September 2021, the Plaintiff returned to her orthopedic doctor complaining of new onset popping in her right knee (Tr. at 669). An MRI was performed in November 2021, which reflected moderate diffuse thinning of the cartilage in the medial portion of the patellofemoral compartment (Tr. at 560-561). At a follow-up in March 2022, she continued to report pain and difficulty going up and down stairs, but had no weakness, numbness, or tingling, and could perform a straight leg raise (Tr. at 1495-1496). In May 2022, the Plaintiff reported using a cane for ambulation "at times" and her range of motion improved (Tr. at 1494-1495). Injections were offered, but the Plaintiff declined (Tr. at 1495). She had an appointment with her primary care physician later that month, where she ambulated with a cane (Tr. at 1882). In July 2022, the Plaintiff's orthopedist prescribed a mobility scooter (Tr. at 1854). In August 2022, the Plaintiff

had another appointment with her orthopedist, where she was observed with a cane, had mildly reduced range of motion, and a stable patella (Tr. at 1856). X-rays were taken, which reflected mild medial compartment osteoarthritis, subchondral sclerosis, and joint space narrowing with notable patellofemoral arthritis (Tr. at 1857).

Later in August 2022, the Plaintiff had a consultative examination. She ambulated with a cane in her right hand and a limping gait favoring her right leg (Tr. at 1859). Her gait was "not unsteady lurching, or unpredictable" and she "d[id] not require the use of a handheld assistive device" (Id.). She had intact sensation and normal upper extremity strength, but reduced right knee strength at 3/5, right plantar flexion strength at 4/5, and left toe extensor strength at 4/5 (Tr. at 1860). Additionally, she had difficulty walking on her heels and tandem gait due to knee pain (Tr. at 1861).

In September 2022, another MRI was performed on the Plaintiff's right knee, reflecting fairly significant thinning of the cartilage of the medial and lateral patellar facets but also intact ligaments and tendons, intact medial and lateral patellar retinaculum, and intact meniscus (Tr. at 1884-1885). She continued to attend physical therapy (Tr. at 2038-2130). At her orthopedic follow-up that same month, it was noted that her "MRI of this time does look a lot better compared to previous MRIs of the knee" (Tr. at 1891). She had crepitus of the knee with tenderness, but had no numbness, tingling, or weakness (Tr. at 1892). In October 2022, she continued to have tenderness of her knee, but her range of motion was full and unrestricted with no difficulty with straight leg raise (Tr. at 1917). In November 2022, right knee x-rays were negative for fracture, dislocation, endosteal scalloping, or periosteal reaction (Tr. at 1938). In November 2022, her motorized scooter was denied by insurance (Tr. at 1952). In December 2022, the Plaintiff was

scheduled to undergo a knee injection but changed her mind (Tr. at 2132). She went to a different orthopedist later that same month for a second opinion, where she was able to do a straight leg raise without issue, and had no significant abnormality with stressing of the patella and adequate strength (Tr. at 2170). She was referred for more physical therapy and was provided a lateral buttress brace to prevent further knee instability (Tr. at 2169). Her physical therapy resulted in her knee "feeling better" with 40% improvement (Tr. at 2149). She was "able to do more functionally with improved strength" but had difficulty "walking for longer distances" (Id.).

Prior Administrative Medical Findings and Opinion Evidence:

At the initial and reconsideration levels of review, state agency medical consultants, Amy Wirts, M.D., and Palle Reddy, M.D., respectively, both found that the Plaintiff could lift/carry fifty pounds occasionally and twenty-five pounds frequently, sit for up to six hours, and stand/walk for up to six hours in an eight-hour workday (Tr. at 140, 152, 164, 171). They further found that the Plaintiff could occasionally push/pull with the right upper extremity (Tr. at 140, 153, 164, 171). Dr. Wirts found that the Plaintiff could frequently stoop and kneel and occasionally climb, balance, and crawl, and Dr. Reddy found that the Plaintiff could frequently balance and stoop, and occasionally climb, kneel, crouch, and crawl (Id.). Finally, Dr. Wirts found that the Plaintiff should avoid concentrated exposure to extreme cold, extreme heat, vibration, pulmonary irritants, and hazards, and Dr. Reddy found that the Plaintiff should avoid concentrated exposure to extreme cold, extreme heat, vibration, and hazards (Tr. at 141, 154, 165, 172).

Chad Lavender, M.D., the Plaintiff's orthopedist, opined in November 2021 that the Plaintiff qualified for disability based on severe arthritis of the knee (Tr. at 668). He opined in March 2022 that the Plaintiff was unable to return to her previous work or any other job due to

9

right knee issues (Tr. at 1496). In May 2022, Dr. Lavender opined that the Plaintiff was unable to return to employment due to knee pain, difficulty with ambulating, and issues going up and down stairs (Tr. at 1494).

In July 2021, Dora Hughes, M.S., C.D.C.E.S., an exercise physiologist, and Bret Ramsey, P.T., D.P.T., a physical therapist, performed a functional capacity evaluation of the Plaintiff and opined that she currently tested in the below sedentary physical demand level with lifting less than ten pounds (Tr. at 556).

In August 2022, Stephen Nutter, M.D., consultative examiner, opined that the Plaintiff could lift/carry up to fifty pounds occasionally and twenty pounds frequently, sit for seven hours, stand for two hours, and walk for two hours in an eight-hour workday (Tr. at 1865). He opined that the Plaintiff could occasionally operate foot controls with the right lower extremity, frequently stoop, occasionally climb ramps/stairs, and never climb ladders/scaffolds, balance, kneel, crouch, or crawl (Tr. at 1866-1867). Finally, he opined that the Plaintiff could never tolerate unprotected heights, occasionally tolerate moving mechanical parts, and frequently tolerate operating a motor vehicle or vibrations (Tr. at 1868).

**The Administrative Hearing:**

<u>The Plaintiff's Testimony:</u>

The Plaintiff testified that she stopped working due to her right knee surgeries, and due to chronic pain, she explained she has difficulties standing or sitting for long periods of time, 20 to 30 minutes, and having to constantly stretch her leg out trying to alleviate the pain. (Tr. at 108-110, 111, 112) She stated she uses a cream that helps "but it's a lot[]", but she does not take any medications. (Tr. at 110, 111) She usually sits in a recliner with her legs up, at waist level, for a

few hours, but she needs to bend and straighten her knee during this time. (Tr. at 112) She said that rain makes her pain much worse. (Tr. at 112-113)

The Plaintiff testified that she uses a cane for walking, standing and balancing, and used crutches at one point, but they bruised her armpits and caused tendonitis in both shoulders requiring physical therapy just to be able to use her arms; she is still unable to lift heavy items. (Tr. at 113-114) She also tried to get a walker and mobility scooter, but insurance did not cover these, and she uses a wheelchair that she got from Facebook that she uses for long distances. (Tr. at 114) She still has problems with her shoulders, can lift less than ten pounds, and has problems with reaching overhead. (Tr. at 115) She indicated she has difficulty performing activities of daily living as well. (Tr. at 119)

<u>The Vocational Expert's Testimony:</u>

In response to the ALJ's hypothetical as outlined in the RFC, supra, the vocational expert testified that the individual could perform light work jobs, including checker, routing clerk and paper pattern inspector; additional sedentary jobs included addressing clerk, order clerk, and button reclaimer. (Tr. at 125-126)

In response to questioning by the Plaintiff's representative, the vocational expert opined that if the hypothetical individual needed to elevate her feet at waist level for up to a third of the workday, this would be a job accommodation, if allowed, and there would be no work at any exertional level. (Tr. at 128) The vocational expert also testified that if the individual used a cane for ambulation or balance to get up from a seat, this would not affect the availability of jobs at light or sedentary levels previously identified, but if the cane was needed all the time, this would preclude competitive employment at any exertional level. (Tr. at 129)

11

**Scope of Review**

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

<u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (quoting <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner is based upon an appropriate application of the law. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." <u>Blalock</u>, 483 F.2d at 775.

**Analysis**

<u>Meeting or Medically Equaling a Listed Impairment:</u>

As stated above, the Plaintiff asserts the ALJ's step three finding is wrong, particularly with regard to the Plaintiff's use of a hand-held assistive device for ambulation. The ALJ explicitly

considered the Plaintiff's right knee impairment under listing 1.17 and 1.18[2], acknowledging that while the record showed she had multiple knee surgeries (Tr. at 36, 579, 601, 652), and had used crutches and a cane at times, and even requested a seated mobility device, "she was not observed to persistently use a walker, bilateral canes, crutches or wheeled and seated mobility device." (Tr. at 36)

Of interest to this case, the SSA issued Social Security Ruling (SSR) 96-9p providing further guidance when the issue of hand-held assistive devices arises:

> **Medically required hand-held assistive device:** To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.
>
> Since most unskilled sedentary work requires only occasional lifting and carrying of light objects such as ledgers and files and a maximum lifting capacity for only 10 pounds, an individual who uses a medically required hand-held assistive device in one hand may still have the ability to perform the minimal lifting and carrying requirements of many sedentary unskilled occupations with the other hand. For

---

[2] Of interest to this appeal, the ALJ noted that one of the criteria necessary to meet listing 1.17 requirements is "[a] documented medical need for a walker, bilateral canes, or bilateral crutches or a wheeled and seated mobility device involving the use of both hands." The ALJ also noted that listing 1.18 required:

> 1. a documented medical need for a walker, bilateral canes, or bilateral crutches or a wheeled and seated mobility device involving the use of both hands; or 2. an inability to use one upper extremity to independently initiate, sustain, and complete age-appropriate activities involving fine and gross movements, and a documented medical need for a one-handed, hand-held assistive device that requires the use of the other upper extremity or a wheeled and seated mobility device that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand; or 3. an inability to use both upper extremities to the extent that neither can be used to independently initiate, sustain, and complete age-appropriate activities involving fine and gross movements.

(Tr. at 36)

example, an individual who must use a hand-held assistive device to aid in walking or standing because of an impairment that affects one lower extremity (e.g., an unstable knee), or to reduce pain when walking, who is limited to sedentary work because of the impairment affecting the lower extremity, and who has no other functional limitations or restrictions may still have the ability to make an adjustment to sedentary work that exists in significant numbers. On the other hand, the occupational base for an individual who must use such a device for balance because of significant involvement of both lower extremities (e.g., because of a neurological impairment) may be significantly eroded.

See, *Titles II and XVI: Determining Capability to do Other Work--Implications of a Residual Functional Capacity For Less Than a Full Range of Sedentary Work*, SSR 96-9p, 1996 WL 374185, at *7. (**bold** in original)

With respect to the Plaintiff's use of the hand-held assistive devices, the ALJ noted several references in the decision, including, as mentioned *supra*, at the step-three determination, noting that the Plaintiff's insurance company denied the request for a motor scooter (Tr. at 36). The ALJ also noted that she presented with a cane at her consultative examination, but she used it on the same side as her right knee, and appeared stable at station, and found not to need an assistive device for ambulation (Tr. at 36, 1858-1870). Because the record did not contain a documented need for the requisite assistive device, the ALJ found the Plaintiff's severe impairment did not meet listing criteria. (Tr. at 36-37)

The ALJ then summarized the Plaintiff's testimony, noting in particular: that when she experienced extremely high pain, she would hit herself in the head with her cane as a distraction; that she did not take medication for pain, but used her wheelchair or recliner to prop up her legs at waist level for a few hours a day; that she could walk a few steps with a limp, but requires a brace and cane in order to do so; that she usually used her arms or cane to get up from a seated position; that she used a cane to stand; that she used crutches for about six months, but they caused tendonitis

14

in her arms, and not being able to lift her arms, requiring three weeks of physical therapy, and still having difficulty lifting her arms; that she tried to get a walker, but insurance denied it; that she has a wheelchair and used a scooter as needed for long distances; that although she could only lift eight pounds with her left arm and seven pounds with her right, she is able to self-propel after physical therapy; and that although she did not want others in her house to help her, she stated she had difficulty performing her activities of daily living. (Tr. at 37-38)

Regarding the salient medical evidence of record, the ALJ acknowledged the record showed the Plaintiff received treatment for her right knee beginning in April 2020, including numerous surgeries. (Tr. at 38-41) Following surgery in May 2020, it was noted in June 2020 the Plaintiff's knee "did poorly six weeks post-reconstruction", necessitating "manipulation under anesthesia with arthroscopic debridement" (Tr. at 39, 601, 584). By July 2020, the ALJ noted the Plaintiff was four weeks post-surgery and off crutches and cane (Tr. at 39, 569). The ALJ reviewed the records showing that the Plaintiff experienced improvement and mobility in her right knee throughout 2020 and the first half of 2021 (Tr. at 39), but during the functional capacity evaluation in July 2021, she "reported cramping in the left hamstring, soreness around the knee cap, aching in the quad, numbness in the lower medial leg from the knee to the ankle and felt squeezing and constriction around the knee cap." (Tr. at 39, 554-559) The ALJ noted the Plaintiff was testing at below sedentary physical demand level, lifting less than ten pounds due to lower back symptoms, while exhibiting full range of motion with bending, reaching forward and overhead and twisting, although her squatting was limited because of her right knee. (Tr. at 39-40, 554-559) She was unable to complete the six minute walk test, but did complete stair climbing. (Tr. at 40, 554-559)

The ALJ noted the Plaintiff reported having pain and a popping sensation in her right knee,

15

although it was overall stable in September 2021 (Tr. at 40, 669), and during an examination in November 2021, she was able to perform a straight leg raise and exhibited no instability on patellofemoral testing, although she complained of pain and had obvious crepitus (Tr. at 40, 668). From January 2021 through October 2021, the ALJ noted the Plaintiff participated in intermittent physical therapy (Tr. at 40, 1498-1845), and by December 2021, she requested her primary care provider to complete paperwork for a handicap placard (Tr. at 40, 853). By March 2022, the Plaintiff continued to report pain at times with difficulty going up and down stairs (Tr. at 40, 1495), and by May 2022, she reported using a cane for ambulation at times (Tr. at 40, 1494). During an appointment with her primary care provider in May 2022, the Plaintiff ambulated with a cane because of her right knee pain (Tr. at 40, 1882). The ALJ noted that in July 2022, the Plaintiff's orthopedist prescribed a mobility scooter at her request (Tr. at 40, 1853-1854), and during a follow up exam in August 2022, she ambulated with a cane (Tr. at 40, 1857). Also in August 2022, the ALJ noted that following a medical consultative examination, while the Plaintiff was observed ambulating with a cane with her right hand with a limping gait favoring her right leg, it was determined she did not require the use of a handheld assistive device; she could walk on her heels, but not at the same time and could not walk on her toes, had difficulty with tandem gait; could not squat; and had reduced range of motion in her right knee (Tr. at 40-41, 1858-1870).

The ALJ noted further that a treatment note from the Plaintiff's orthopedist in September 2022 indicated she participated in aquatic therapy, used crutches instead of a cane, and exhibited no instability and full range of motion, though she continued to report pain in her right knee; she was referred for non-surgical treatment. (Tr. at 41, 1890-1893) Examinations in October 2022 were unremarkable, though the Plaintiff reported using crutches (Tr. at 41, 1918). By November,

16

however, the ALJ noted that the Plaintiff reported bruised armpits from using crutches and being unable to work by selling items on eBay because it was very physically demanding, and during an exam, ambulated with crutches (Tr. at 41, 1956). The ALJ also noted the Plaintiff participated in physical therapy from September through November 2022 (Tr. at 41, 2024-2106, 2115). The ALJ noted orthopedics scheduled the Plaintiff for an injection, though she changed her mind, it was recommended she wear a left knee sleeve due to slight patella instability (Tr. at 41, 2131-2133).

The ALJ noted further that the Plaintiff sought an initial evaluation in December 2022 seeking a second opinion, and during her exam, was able to do a straight leg raise, with no significant abnormality with stressing the patella, and with intact strength; while the Plaintiff had no significant effusion, she did exhibit tenderness to palpation across the medial femoral condyle and medial aspect of the patella (Tr. at 41, 2169). She was ordered physical therapy and a brace (Id.) Finally, the ALJ noted that the medical record showed the Plaintiff attended physical therapy again in January 2023, and that she indicated her right knee felt better, but was still tight, and she reported being able to do more functionally with improved strength, although she had some difficulty controlling her pain, walking for longer distances and with a painful gait pattern (Tr. at 41, 2149). The ALJ noted that later treatment records indicated that while the Plaintiff was minimally compliant with performing home exercises, she was walking more (Tr. at 41, 2153).

From this medical evidence, the ALJ determined that the Plaintiff's alleged pain levels and need for assistive devices were inconsistent with her treatment history, despite the fact she did undergo three surgeries and multiple bouts of physical therapy. (Tr. at 41) Again, although the ALJ acknowledged the Plaintiff used a cane and crutches at times, and reported using a wheelchair and requested a mobility scooter that her insurance denied, the ALJ noted the record still "does not

17

consistently note dependence on an assistive device or note clinical findings on exam, which support the need to use an assisted device for ambulation." (Tr. at 41-42) The ALJ observed that following her last surgery, the Plaintiff "minimally managed her right knee" with physical therapy, aqua therapy, and natural supplements, and denied injections as well as pain medication; moreover, imagining studies, clinical findings on exam, in addition to her own reports of stability and testimony are supported by the medical record. (Tr. at 42, 668, 679, 695, 1494, 1857, 1858-1870, 1882, 1890-1893, 1918, 2169)[3] The ALJ further observed that the record contained no emergency room visits for acute knee pain, and that the most recent records from January 2023 showed that the Plaintiff reported some improvement with her right knee, including the ability to perform more activities of daily living, as well as increased walking (Tr. at 42, 2149, 2153).

The aforementioned supports the ALJ's third-step finding that the Plaintiff's severe physical impairment did not meet listing requirements. While the record does show that the Plaintiff did use a cane or crutches and even purchased her own wheelchair, there is simply no documentation supporting a medical need for such assistive devices as defined under SSR 96-9p. See also, 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 1.00B2b:

> (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

---

[3] The ALJ cited numerous records in support of this finding: an orthopedic treatment note dated November 16, 2021; an orthopedic treatment note dated April 1, 2021; an MRI report dated February 13, 2021; an orthopedic treatment note dated May 3, 2022; an office note regarding x-rays of right knee dated August 16, 2022; Dr. Nutter's internal medicine examination report dated August 17, 2022; a treatment note from primary care provider dated May 18, 2022; an orthopedic clinic note dated September 15, 2022; an orthopedic treatment note dated October 7, 2022; and an initial orthopedic evaluation report from WVU Healthcare dated December 13, 2022.

18

(2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation. (emphasis added)

In short, the undersigned **FINDS** the ALJ's step three analysis is sufficient and supported by substantial evidence.

Evaluation of Symptoms in Disability Claims:

The Plaintiff next asserts that the ALJ improperly discounted her subjective complaints pursuant to legal standards to the extent the ALJ's analysis seem to require her allegations to be "completely consistent with the record." (ECF No. 7 at 10)

SSR 16-3p clarifies the evaluation of symptoms, including pain: 20 C.F.R. §§ 404.1529, 416.929 require a finding of the extent to which an individual's statements about pain or other symptom(s) and its functional effects can reasonably be accepted as consistent with the objective medical evidence and other evidence; that explains the factors to be considered in assessing the consistency of the individual's statements about symptoms; and states the importance of explaining the reasons for the finding about the consistency of the individual's statements.

The Ruling further directs adjudicators to use a two-step process for evaluating an individual's symptoms: first, it must be determined that the individual has a medically determinable impairment ("MDI") that could reasonably be expected to produce the individual's

alleged symptoms; and second, the intensity and persistence of the individual's symptoms must be evaluated to the extent which they limit the individual's ability to perform work-related activities. See, SSR 16-3p, 2016 WL 1119029, at *3-4. This evaluation must be based on a consideration of all of the evidence in the case record. This includes, but is not limited to: (1) the medical signs and laboratory findings; (2) diagnosis, prognosis, and other medical opinions provided by treating or examining physicians or psychologists and other medical sources; and (3) statements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work.

A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). Additionally, the Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons . . . Factors relevant to your symptoms, such as pain, which we will consider include:
> (i) Your daily activities;
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

Id. §§ 404.1529(c)(3), 416.929(c)(3).

To the extent the Plaintiff contends the ALJ's decision ostensibly mandates that her symptoms be completely consistent with the record, there is no indication in the written decision that the ALJ required such consistency – she merely recognized that the Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (Tr. at 38)

As noted *supra*, the ALJ reviewed the relevant evidence of record concerning the Plaintiff's extensive knee treatment, which included the Plaintiff's symptomology, finding that she remained capable of light work, and therefore not disabled. While the Plaintiff does not specify how the ALJ's evaluation of her subjective complaints violated legal standards, other than conclusively stating that she improperly discounted her allegations, it must be emphasized that "an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." See Manigo v. Colvin, 2015 WL 74954, at *5 (D.S.C. Jan. 6, 2015) (quoting Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000)). Indeed, "there is no particular language or format that an ALJ must use in his . . . analysis as long as there is sufficient development of the record and explanation of the findings to permit meaningful review." Clark v. Comm'r of Soc. Sec., No. 09–417, 2010 WL 2730622, at *17 (E.D. Va. June 3, 2010) (quoting Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004)). The ALJ's opinion is sufficient if it "not only sets forth the facts used in rendering his decision, but it also provides a thorough examination of the medical evidence." Id. On that note, to the extent the Plaintiff contends the ALJ failed to

21

properly question her non-compliance to receive injections or take pain medication (ECF No. 7 at 10) is without merit: this Court rejected such arguments, noting there is no binding authority that an adjudicator must question a claimant's non-compliance, but is merely an additional factor an ALJ considers, so long as it is not the primary or sole factor to support the subjective symptom analysis. See Daniels v. Saul, No. 2:20-cv-00230, 2021 WL 667945, at *11 (S.D.W. Va. Jan. 26, 2021), *report and recommendation adopted*, 2021 WL 665534, at *1 (S.D.W. Va. Feb. 19, 2021).

In any event, the Fourth Circuit held that "an ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." See Arakas v. Comm'r, Soc. Sec. Admin., 983 F.3d 83, 98 (4th Cir. 2020) (internal citations omitted). The Fourth Circuit "reiterate[d] the long-standing law in our circuit that disability claimants are entitled to rely exclusively on subjective evidence to prove the severity, persistence, and limiting effects of their symptoms." Id. It is important to recognize that in Arakas, the Court concluded that substantial evidence did not support the ALJ's finding that the claimant's subjective complaints were inconsistent with her daily activities because the overall record actually supported her subjective complaints and demonstrated she would be unable to engage in substantial gainful activity. Id. Another significant, if not critical, aspect of the Arakas holding is that the Court found the ALJ's analysis included misrepresentations or overinflation of the claimant's abilities, to the exclusion of that evidence which did not support such a conclusion. Id. For purposes herein, this Court must determine if the subject ALJ's analysis relied primarily on the lack of objective medical evidence as the reason for discounting the Plaintiff's subjective complaints.

In addition to providing a lengthy summary of the Plaintiff's testimony from the administrative hearings, as well as her statements in support of her applications for benefits (Tr. at 37-38), the ALJ properly performed the two-step process, and proceeded to review the evidence of record and reconciled it with the Plaintiff's subjective complaints (Tr. at 38-42). In addition to making several observations concerning the Plaintiff's physical impairments, which included the Plaintiff's response to treatment as well as a consideration of the factors endorsed under Sections 404.1529(c)(3) and 416.929(c)(3), *supra*, the ALJ also considered the Plaintiff's described daily activities:

> The claimant has described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. She indicated she cared for her pets, performed personal care, prepared meals, did household chores, drove a car, could go out alone, shopped in stores, she spent time with others in person, and noted she liked to go see a band every once in a while or a festival. At the hearing, the claimant reported running an eBay based business, prepared food, performed personal care, and completed household chores.

(Tr. at 42, 370-377)[4] Following her review of the Plaintiff's daily activities, the ALJ also considered the medical opinion evidence, *supra*, finding none of them persuasive based on the evidence of record (Tr. at 42-44).[5]

In <u>Hines v. Barnhart</u>, the Fourth Circuit stated that:

> Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and

---

[4] The ALJ referenced the Plaintiff's Function Report dated September 3, 2020.

[5] Notably, the ALJ found the Plaintiff more limited than opined by the state agency medical consultants, Drs. Wirt and Reddy, and found that the consultative examiner, Dr. Nutter, "did not adequately consider the effect of the claimant's knee impairment upon the ability to lift and carry and with standing and walking." (Tr. at 44) Regarding the Plaintiff's treating orthopedist, Dr. Chad Lavender, the ALJ properly observed that "his opinions are mainly an issue reserved to the Commissioner 20 CFR 404.1527(e)(1) and 416.927(e)(1)." (Tr. at 43)

the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers.

453 F.3d at 565 n.3 (citing Craig v. Chater, 76 F.3d 585, 595 (4th Cir. 1995)); see also, Shelley C. v. Commissioner of Social Security Administration, et al., No. 21-2042, 61 F.4th 341 (4th Cir. Feb. 22, 2023) (expanding Arakas governing subjective statements of chronic depression given its unique and subjective nature). Following her review of the medical and other evidence of record, while the ALJ recognized the Plaintiff suffers from ongoing pain, especially in her right knee, she nevertheless remained capable of a range of light work.

Given the conflicting evidence consisting of the Plaintiff's allegations of pain and other symptoms with the objective and other evidence of record, the ALJ is solely responsible for resolving the conflict; the issue before the Court is not whether the Plaintiff is disabled, but whether the ALJ's finding is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Craig, 76 F.3d at 589. The ALJ provided an adequate review that included not only the Plaintiff's testimony, but also the objective medical evidence of record and other evidence of record. In short, the ALJ provided a fairly thorough and adequate review of the Plaintiff's subjective complaints, reconciled them with the medical and other evidence of record, and ultimately determined that her symptoms did not limit her to the extent alleged.[6] Indeed, the law does not require one to be pain-free of experience no discomfort in order to be found not disabled. Hays v. Sullivan, 907 F.2d 1453, 1458 (4th Cir. 1996). In this case, it is clear

---

[6] Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) ("In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ]." (quoting Craig, 76 F.3d at 589)).

that the ALJ did not select only those portions from the objective medical evidence that failed to support the Plaintiff's allegations of disabling impairments, as she also considered the objective medical evidence that did support her claims, as well as her testimony and other evidence, both supporting and non-supporting.

Accordingly, the undersigned **FINDS** that the ALJ's subjective symptoms analysis complied with the pertinent Regulations and controlling case law and is based upon substantial evidence. The undersigned further **FINDS** the ALJ's discussion of the objective and other evidence of record in her evaluation of the Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms, and that the ALJ's conclusion that her statements were not entirely inconsistent with the evidence of record complied with the applicable law and is supported by substantial evidence.

The undersigned further **FINDS** the ALJ's unfavorable decision is supported by substantial evidence.

## Recommendations for Disposition

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Judge confirm and accept the foregoing findings and **RECOMMENDED** that the District Judge **DENY** the Plaintiff's request for remand (ECF No. 7), **GRANT** the Defendant's request to affirm the decision (ECF No. 8), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Irene C. Berger, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules

6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Berger, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: January 24, 2024.



Omar J. Aboulhosn
United States Magistrate Judge